## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CTP INNOVATIONS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 15-cv-3984** |
| **v.** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **SP ACQUISITION IL, LLC,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff CTP Innovations, LLC, for its Complaint against Defendant SP Acquisition IL, LLC, states as follows:

## I.    PRELIMINARY STATEMENT

This lawsuit is one of over forty lawsuits that Plaintiff CTP Innovations, LLC ("CTP") has filed in district courts throughout the United States over the past eighteen months. In each of those case, CTP asserted infringement of U.S. Patent Nos. 6,611,349 (the "'349 Patent") and/or 6,738,155 (the "'155 Patent"). The vast majority of those cases have been resolved and dismissed. The Judicial Panel on Multidistrict Litigation consolidated the remaining cases before the District of Maryland in *In re: CTP Innovations, LLC Patent Litigation*, Case No. MDL 14-MD-2581. This Complaint, therefore, is a "tag-along filing" that will be consolidated under MDL 14-MD-2581.

On February 27, 2015, the District of Maryland provided all of the defendants in the consolidated case the opportunity to stay litigation against them if they each agreed to sign the "Stipulation for Defendant(s) to be Bound by the Estoppel Effect of 35 U.S.C. § 315(e). As of the filing of this Complaint, all of the defendants have filed the stipulation.

The District of Maryland granted the option to stay because a group of third-party manufacturers filed four petitions for *inter partes* review of the '155 Patent and the ''349 Patent with the Patent Trial and Appeal Board of the United States Patent and Trademark Office ("PTAB"). Based on the petitions, PTAB instituted *inter partes* reviews of all of the claims of the '155 Patent and claims 1-3 and 10-13 of the '349 Patent. PTAB declined to institute *inter partes* review of claims 4-9 of the '349 Patent. On March 31, 2015, the PTAB denied Petitioners' Request for Rehearing and reconfirmed claims 4-9 are not part of the instituted review.

Plaintiff asserts infringement against Defendant in this case of claim 4 and potentially claims 5 through 9 of the '349 Patent upon further discovery. Plaintiff does not assert infringement of claims 1-3 and 10-13 of the '349 Patent. CTP will notify the District of Maryland regarding the filing of this Complaint. Plaintiff anticipates that this matter will be promptly transferred for consolidation with MDL 14-MD-2581.

## II. THE PARTIES

1.      Plaintiff CTP Innovations, LLC ("CTP") is a Delaware limited liability company.

2.      Upon information and belief, Defendant SP Acquisition IL, LLC, ("Defendant") is an Illinois corporation with its principal place of business located at 6019 West Howard Street, Niles, Illinois 60714. Defendant does business in Illinois, including in this district. Defendant may be served with process upon it's registered agent, Adam M. Lefebvre, 100 Longmeadow Road, Winnetka, Illinois 60093.

## III. NATURE OF ACTION

3.      This is a patent infringement action to stop Defendant's infringement of U.S. Patent No 6,611,349 (the "'349 Patent").

## IV. JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because it arises under the Patent Laws of the United States, United States Code, Title 35.

5.     Venue is proper in this district under 28 U.S.C. §§ 1391(c) and 1400(b).   On information and belief, Defendant has a regular and established place of business in this district, has transacted business in this district, and/or has committed acts of patent infringement in this district.

6.     On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Illinois Long Arm Statute, due at least to its substantial business in this forum including but not limited to: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Illinois and in this district.

## V.   GENERAL SUMMARY OF THE TECHNOLOGY AT ISSUE

7.     The invention in the '349 Patent relates generally to the field of publishing and printing.

8.     More specifically, the invention relates to systems and methods of providing publishing and printing services via a communication network involving computer to plate technology.

9.     Simplistically, computer to plate technology involves transferring an image to printing plate without the middle step of creating a film of the image that is imprinted on the plate.  The plate is then used in a printing press to transfer the image to different types of media, for example, but not by way of limitation, newspaper, card stock, or standard paper.  By directly

transferring the image to the plate, the printing company eliminates the need for film and related developer chemicals, improves image quality, and may produce plates more quickly. The claimed methods and systems provide a solution for communicating and managing printing and publishing services without the need to physically transfer copies of design files and proofs through workflows that result in the generation of a plate ready file.

## VI.  BACKGROUND OF THE INVENTION IN THE '349 PATENT

10.   Key steps for producing printed materials using a plate process include (1) preparing copy elements for reproduction, (2) prepress production, (3) platemaking, (4) printing, and (5) binding, finishing and distribution.

11.   In the printing production process, an "end user" prepares copy elements for reproduction. In this "design" stage of the printing process, the end user provides images and data using slides or computer files to create one or more "pages." Pages can be designed using computer programs such as QuarkXpress, Adobe InDesign, Adobe Illustrator, Photoshop, or other printing or publishing software packages. Prior to the invention claimed in the '349 Patent, slides or computer disks containing pages to be printed were sent (via mail or express carrier) to be prepared for creation of a plate.

12.   In the prepress production stage, the end user input (or "copy") is transformed into a medium that is reproducible for printing. Typically, prepress involves typesetting, illustration, page building and design, image capture, image color correction, file conversion, RIPing, trapping, proofing, imposition, filmsetting, and platesetting. "Proofing" involves producing a proof, or sample, of what the printed product will look like. Prior to the invention claimed in the '349 Patent, the proof was sent by mail or express carrier to the end user for review and approval. After alterations are made, new proofs are sent to the end user. Once approval of the proof is given by the end user, a medium, such as a computer to plate (CTP) file is produced and

sent to the printer. "Imposition" involves the set of pages on a particular plate as well as their positioning and orientation. Imposition is particularly important in the creation of booklets or catalogs, where pages are positioned using register marks to assist in the stripping, collating, and folding of the printed product.

13.   In the platemaking stage, a "printer" manufactures a printing plate using the medium created during prepress. In the printing stage, the printer uses the printing plate to create the printed product. In the binding, finishing and distribution stage, the printed product is prepared in its final form.

14.   Each step in the printing production process described briefly above can be accomplished using a variety of different known systems and techniques. Nevertheless, such conventional systems have many delays, particularly in the transporting of pages and proofs to and from the end user and prepress provider. Due to delays and the fragmented nature of conventional printing production systems, errors often occur.   Further, typical printing production systems are limited in their ability to re-purpose data, manage content of pages, and piece together individual processes or tasks to establish an efficient production system or "workflow". Indeed, no conventional system prior to the invention claimed in the '349 Patent combines prepress, content management, infrastructure (server, storage & distribution) and workflow services.

15.   Prior to the invention claimed in the '349 Patent, conventional printing and publishing systems generally include Macintosh computers or workstations which communicate with each other using the AppleTalk protocol.   AppleTalk protocol could not, however, be communicated over switched networks such as the Internet and private networks where nodes in the network have IP (Internet Protocol) addresses.   As such, conventional systems could not

merely be coupled to a communication network for remotely controlling design, prepress and print processes.

16.    Prior to the invention claimed in the '349 Patent, there was a need for a system which combines design, prepress, content management, infrastructure (server, storage & distribution) and workflow.  For end users in particular, there was a need for a system and a method to gain control of the design, prepress, and print processes.  To save time and costs, there was a need to eliminate manual shipping of proofs back and forth to a prepress provider.  Further, there was a need for a prepress capability at a local facility without the time and costs of shipping proofs back and forth to a prepress provider.  Even further, there was a need for a system and method to provide plate-ready files over a communications network for delivery to a CTP device.  Moreover, for commercial printers, there was a need for a system and method to remotely drive a plate-setting device located at a printer's facility.  Further, there was a need to decrease the amount of time necessary to generate printing plates after processing of the pages (i.e., the cycle time).  Even further, there was a need for providing access to the functionality of high-end server, storage, and networking equipment to the printer facility without the associated capital investments.

## VII.  *INTER PARTES* REVIEW

17.    On July 29, 2013, Printing Industries of America ("PIA") filed a petition to institute an *inter partes* review proceeding with the United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB").  That case was captioned *Printing Industries of America v. CTP Innovations, LLC* (Case No. IPR2013-00474) ("IPR2013-00474").

18.    In IPR2013-00474, the petitioner challenged the validity of each and every claim in the '349 patent.

19.    On December 31, 2013, PTAB found that the petition in IPR2013-00474 did not demonstrate that there was a reasonable likelihood that the petitioner would prevail with respect to invalidating at least one of the claims in the '349 Patent.

20.    A true and correct copy of PTAB's determination in IPR2013-00474 is attached hereto as **Exhibit 1**.

21.    On May 20, 2014, Eastman Kodak Company, Agfa Corporation, Esko Software BVBA and Heidelberg, USA filed *inter partes* review petitions IPR2014-00790 and IPR2014-00791 seeking review of all the claims of the '349 Patent.

22.    On November 28, 2014, the PTAB took up the petitions and instituted review of claims 1-3 and 10-14 of the '349 Patent.  Claims 4-9 of the '349 Patent are not part of the instituted review.

## VIII.  INFRINGEMENT OF THE '349 AND '155 PATENTS IS "UBIQUITOUS"

23.    Upon information and belief, PIA is the largest trade association representing the printing and graphic communications industry in the United States.

24.    Michael Makin, president and CEO of PIA (petitioner in IPR2013-00474) testified before the Senate Committee on the Judiciary, that the inventions in the '349 and '155 Patents

> relate[ ] to how a digital file, like a PDF file, is handled and manipulated in a print production operation up until the time it is used to image a printing plate.  This method of digital workflow and plate imaging was new in the 1990s when the patent was issued but has become ubiquitous in the industry now.

Statement of Michael F. Makin, MBA, President & CEO of Printing Industries of America, Before the Senate Committee on the Judiciary, titled "Protecting Small Business and Promoting Innovation by Limiting Patent Troll Abuse," dated December 17, 2013 (the "PIA Statement"), at 4-5 (emphasis in original).  A true and correct copy of the PIA Statement is attached hereto as **Exhibit 2**.

25.    In so making this statement, it is clear that Makin and PIA were able to determine from the face of the '349 Patent that infringement of the '349 Patent was "ubiquitous in the industry now."

## IX.  CAUSES OF ACTION

### COUNT I

26.    CTP incorporates the preceding paragraphs 1-25 as though fully set forth herein.

27.    CTP owns, by assignment, the '349 Patent entitled "System and Method of Generating a Printing Plate File in Real Time Using a Communication Network."  A true and correct copy of the '349 Patent is attached hereto as **Exhibit 3**.

28.    Upon information and belief, Defendant, in violation of 35 U.S.C. § 271, has infringed, literally or through the doctrine of equivalents, and continues to infringe at least claim 4 of the '349 Patent and likely claims 5-9 of the '349 Patent as well through Defendant's using a method of generating a plate-ready file configured for the creation of a printing plate, said plate-ready file being associated with page layouts and being provided in real time from a remote location using a communication network and selling and offering services that include this method (the "Infringing Services").

29.    Defendant has not given the Infringing Services a specific and publicly-available name.   Accordingly, Plaintiff cannot provide the name used by Defendant for such services without the benefit of discovery.

30.    Exemplary Infringing Services include, without limitation, systems and methods used by Defendant in connection with, at least, its offset sheet-fed and web printing services that involve workflows related to plate-ready files and/or the generation of such files.

31.    Exemplary Infringing Services do not include variable data printing because that type of printing does not involve the generation of a plate-ready file.

32.    Defendant has sufficient experience and knowledge of computer to plate technology generally, and of its systems and methods specifically, to determine which of its systems and methods involve the generation of plate-ready files.

33.    Defendant has sufficient experience and knowledge of computer to plate technology generally, and of its systems and methods specifically, to determine which of its systems and methods do not involve the generation of plate-ready files.

34.    Defendant has had constructive and actual notice of the '349 Patent due to the significant publicity in the printing industry regarding the '349 Patent and lawsuits involving allegations of infringement of the '349 Patent.

35.    Upon information and belief, Defendant was a member of PIA on December 17, 2013, when PIA's CEO, Mr. Makin testified before Congress.   PIA issued a number of press releases regarding Mr. Makin's testimony, and during his testimony he directly referenced a cease and desist letter sent by CTP's counsel to an alleged infringer.

36.    On information and belief, Defendant will continue to infringe the '349 Patent unless enjoined by this Court.

37. On information and belief, Defendant's infringement of the '349 Patent is, has been, and continues to be willful and deliberate in whole or in part because Defendant was aware of the '349 Patent from the substantial publicity in the printing industry relating to the '349 Patent, Defendant's membership in PIA, and Mr. Makin's testimony and related press releases. Defendant has also received this Complaint, and yet continues to engage in its infringing conduct.

38. As a direct and proximate result of Defendant's infringement of the '349 Patent, CTP has been and continues to be damaged in an amount yet to be determined.

39. Unless Defendant's ongoing infringement is enjoined, CTP will suffer irreparable injury for which there is no adequate remedy at law.

40. This is an exceptional case such that CTP should be entitled to its reasonable attorney fees and expenses incurred in prosecuting this action and defending any counterclaims brought by Defendant.

### IX.  REQUEST FOR RELIEF

Wherefore, CTP requests the following relief:

1. A judgment in favor of CTP that Defendant has infringed claims 4-9 of the '349 Patent and that such infringement was willful;

2. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other actors acting in active concert therewith from infringing the '349 Patent;

3. A judgment and order requiring Defendant to pay CTP its damages in an amount not less than a reasonable royalty, treble damages, costs, expenses, and prejudgment and post-

judgment interest for Defendant's infringement of the '349 Patent, as provided under 35 U.S.C. §
284;

    4.    A judgment and order finding that this is an exceptional case within the meaning of
35 U.S.C. § 285, and awarding to CTP its reasonable attorney fees and expenses; and

    5.    Any and all other relief that the Court deems just and proper.

## X. JURY DEMAND

CTP requests a jury for all issues so triable.

Respectfully submitted,

_Attorneys for Plaintiff CTP Innovations,
LLC_

Tobin J. Taylor
Maura Yusof
Brett M. Mares
HEYL, ROYSTER, VOELKER & ALLEN
33 N. Dearborn St., 7th Floor
Chicago, IL 60602
Telephone: (312) 853-8700
Facsimile: (312) 782-0040
Email: ttaylor@heylroyster.com; myusof@heylroyster.com; bmares@heylroyster.com

Of Counsel:
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Samuel F. Miller (BPR No. 22936)
Maia T. Woodhouse (BPR No. 30438)
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone: (615) 726-5594
Facsimile: (615) 744-5594
Email: smiller@bakerdonelson.com; mwoodhouse@bakerdonelson.com

_Attorneys for CTP Innovations, LLC_